IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SALVADOR, *et al.*,

          *Plaintiffs*,

  v.

SESSIONS, *et al.*,

          *Defendants*.

CIVIL ACTION
NO. 18-01608

**PAPPERT, J.**                                                                                        April 9, 2019

## **MEMORANDUM**

Grissette Salvador, an American citizen, filed an I-130 Petition with the United States Citizenship and Immigration Services on behalf of Deepak Kumar, an alien, requesting that USCIS grant Kumar immediate relative status as her spouse. USCIS denied the Petition, finding that Kumar had previously engaged in a sham marriage in violation of 8 U.S.C. § 1154(c). Salvador appealed that decision to the Board of Immigration Appeals, which—after remanding the case to USCIS for further development of the record—ruled that substantial and probative evidence supported the finding that the purpose of Kumar's previous marriage was to evade the immigration laws.

Salvador and Kumar bring this action against various government officials and agencies, arguing that the BIA's decision was arbitrary, capricious or otherwise not in accordance with the law. They also contend that the denial violated their due process rights and that the punishment constituted an excessive penalty in violation of the

1

Eighth Amendment. Defendants now move for summary judgment, which the Court grants for the reasons that follow.

I

Kumar entered the United States on a visa as the fiancée of an American citizen in 2003. (Administrative Record ("R.") CAR000656–60, ECF No. 7.) More specifically, Kumar's family arranged for him to marry his first cousin, A.B., who lived in the United States. (R. at CAR000347.) Kumar married A.B. on June 3, 2003. (*Id*. at CAR000648.) After the wedding, Kumar lived in A.B.'s parents' home but slept in a different bedroom than A.B. (*Id*. at CAR000347, CAR000587.) The couple never consummated their marriage. (*Id*. at CAR000587.) Shortly after the wedding, A.B. told Kumar that she was in love with another man, S.K. and asked for a divorce. (Compl. at ¶ 23; R. at CAR000636.) On October 30, 2003, A.B. updated I-485 and I-765 applications for Kumar to obtain permanent resident status in the United States, informing USCIS that she was filing for divorce. (R. at CAR000636.) Kumar and A.B. obtained a divorce decree on June 21, 2004, terminating the marriage. (*Id*. at CAR000613.) Despite separating from A.B., Kumar remained in the United States and did not return to India.

In 2009, Kumar met Grissette Salvador, whom he married on October 9, 2010. (*Id*. at CAR000611.) Salvador, an American citizen, filed the I-130 Petition naming Kumar as the beneficiary on January 23, 2011. (*Id*. at CAR000606.) USCIS interviewed the couple before issuing a Notice of Intent to Deny the I-130 on December 15, 2011. (*Id*. at CAR000578.) USCIS determined that Kumar's previous marriage to A.B. was a sham, which precluded approval of the Petition. (*Id*. at CAR000578.) The

decision was based on facts uncovered during an investigation, including that Kumar and A.B. never shared a room or consummated the marriage, resided together for a total of only 15-20 days, and stopped whatever meaningful interaction they had within weeks of their marriage.  (*Id*. at CAR000578–79.)  USCIS denied the I-130 Petition on January 20, 2012.  (*Id*. at CAR000573.)

Salvador appealed that decision to the Board of Immigration Appeals.  (Compl. ¶ 34; R. at CAR000466.)  On July 25, 2012, the BIA remanded the case back to USCIS, finding that "the record [was] not sufficiently developed" for review.  (R. at CAR000366–367.)  The BIA expressed concern that the only evidence in the record were handwritten notes bearing the apparent stamp of an immigration officer.  (*Id*.)  These notes did not contain Kumar's name, signature or the full name of the immigration officer and lacked a detailed description of the circumstances under which the statements were made.  (*Id*.)

Following the BIA's remand, USCIS officers conducted two separate investigations, including site visits and interviews with A.B.  (*Id*. at CAR000005.)  The officers obtained multiple affidavits from A.B. and submitted additional evidence to USCIS, which issued a second Notice of Intent to Deny the I-130 Petition on September 11, 2013.  (*Id*. at CAR000331–333.)  USCIS denied the Petition on February 6, 2015, again finding that approval was barred due to prior marriage fraud.  (*Id*. at CAR000085.)

BIA reviewed the USCIS determination *de novo* and agreed with USCIS's decision that substantial and probative evidence supported a finding that Kumar previously entered into his marriage with A.B. solely to evade the immigration laws.

3

(*Id*. at CAR000005.)  The BIA again based its denial on evidence that: the marriage was of short duration and never consummated; Kumar and A.B. lived in the same house for fifteen to twenty days; Kumar and A.B. were first cousins; S.K. lived with A.B. and her family at their home from 2001 until they moved into their own home in 2006; A.B. stated that she told Kumar a couple days after their marriage that she was dating S.K. and that when USCIS was conducting its investigation in 2011 Kumar worked as the manager for a gas station run by A.B. and S.K.  (*Id*. at CAR000005–6.)

Following the BIA's decision, Salvador and Kumar filed their Complaint in this Court, (ECF No. 1), asserting that the decision was arbitrary and capricious in violation of the Administrative Procedure Act, the decision violated their due process rights and that the punishment constituted an excessive penalty in violation of the Eighth Amendment.  (*Id*. at ¶¶ 47, 49, 51, 53.)  Defendants moved for summary judgment based on the administrative record.  (ECF No. 8.)

## II

### A

Although "summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency's action is supported by the administrative record" the district court is acting as an appellate tribunal and "the usual summary judgment standard does not apply." *Zizi v. Bausman*, 306 F.Supp.3d 697, 702 (E.D. Pa. 2018) (citing *Dorley v. Cardinale*, 119 F.Supp.3d 345, 351 (E.D. Pa. 2015)); *see also Uddin v. Mayorkas*, 862 F.Supp.2d 391, 399 (E.D. Pa. 2012).  An agency decision can only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

"In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Final agency action is arbitrary and capricious where "the evidence not only supports a contrary conclusion but compels it." *Yitang Sheng v. Attorney Gen. of the United States*, 365 Fed.Appx. 408, 410 (3d Cir. 2010) (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir. 2001)). In assessing an agency decision, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Even if the district court disagrees with a decision, a "court is not to substitute its judgment for that of the agency." *NVE, Inc. v. Dep't of Health & Human Servs.*, 436 F.3d 182, 190 (3d Cir. 2006).

B

A United States citizen may apply for his or her alien spouse to obtain lawful permanent residence by filing an I-130 Petition with USCIS. 8 C.F.R. §§ 204.1(a)(1), 204.2(a). The petitioner bears the burden of proving eligibility and can do so by presenting evidence of a valid marriage. 8 U.S.C. § 1361; *see In re Brantigan*, 11 I. & N. Dec. 493, 495 (BIA 1966). However, USCIS cannot approve an I-130 Petition filed on behalf of an alien beneficiary who has "previously been accorded, or has sought to be accorded, immediate relative status" on the basis of a fraudulent marriage. The statute provides that:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as

5

a spouse of a citizen of the United States . . . by reason of marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).

The government bears the burden of proving marriage fraud by establishing substantial and probative evidence that the prior marriage was a sham. *Matter of Kahy*, 19 I. & N. Dec. 803, 806, 1988 WL 235464 (B.I.A.1988); 8 CFR § 204.2(a)(1)(ii). Substantial evidence is "more than a scintilla, but . . . something less than a preponderance of the evidence." *Fla. Gas Transmission Co. v. FERC*, 604 F.3d 636, 645 (D.C. Cir. 2010).

If USCIS discovers substantial and probative evidence related to marriage fraud, it must issue a Notice of Intent to Deny ("NOID") informing the petitioner of "the derogatory information" and giving him the opportunity to respond with rebuttal evidence. 8 C.F.R. § 103.2(b)(8)(iv). Upon receiving the NOID, the burden shifts to the petitioner to rebut USCIS's finding of fraud. *See Matter of Kahy*, 19 I. & N. Dec. at 806–807. The petitioner must establish by clear and convincing evidence that the prior marriage was not entered into for the purpose of evading the immigration laws. "Failure to meet the 'clear and convincing evidence' standard will result in the denial of the petition." 8 C.F.R. § 204.2(a)(1)(i)(C).

III

Petitioners' primary argument is that BIA's denial of the I-130 Petition was arbitrary and capricious because there was insufficient evidence in the record to meet the requisite "substantial and probative evidence" standard. Petitioners argue, *inter alia*, that the evidence does not demonstrate a sham marriage but instead shows that

6

A.B. and Kumar entered into a traditional arranged marriage in 2003. (Resp. Opp'n at 9, ECF No. 9.)

While the BIA considered documents submitted by Kumar, including affidavits and background evidence regarding Indian traditional marriages, the BIA did not find his version of events credible. (R. at CAR000005.) The BIA concluded that "there is substantial and probative evidence showing that the beneficiary attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." (*Id.* at CAR000005.) The BIA based its decision on statements made to investigators, affidavits and immigration files in the record. (*Id.*) The evidence showed that:

> the marriage between [Kumar] and A.B. was of short duration and never consummated, and [Kumar] lived with A.B. for only 15 to 20 days . . . [T]here is extensive evidence, including sworn statements by A.B., that her current husband and father of three children, "S.K.," lived with A.B. and her family at their home from 2001 until he moved out with A.B. to their own home in 2006 . . . [A.B.] told [Kumar] "a couple days" after their marriage that she was dating her now-husband, and did not consummate the marriage because [Kumar] knew that she was dating another man. A review of the immigration files confirms A.B.'s account that she and her now-husband were living together before, during, and after her marriage to [Kumar].

(*Id.*) The BIA also observed that Kumar, after initially denying knowing S.K., conceded that he was working at the time of the USCIS investigation as the manager for a gas station run by A.B. and S.K. (*Id.* at CAR000006.)

While Petitioners may disagree with USCIS's and BIA's findings, this Court cannot "reweigh the evidence," *El Conejo Americano of Texas, Inc. v. Dep't of Transp.*, 278 F.3d 17, 20 (D.C. Cir. 2002), or "substitute its judgment for that of the agency," *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (citing *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)). "To reverse the BIA finding, [this Court] must find that the evidence not only supports [the

7

opposite] conclusion, but compels it." *Immigration & Naturalization Serv. v. Elias–Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis in original).  Because the evidence in this record does not compel the opposite conclusion, the BIA's decision denying the I-130 Petition was not arbitrary and capricious.

Petitioners further argue that "there is no direct evidence to support a sham marriage finding".  (Resp. Opp'n at 16.)  They contend that such a finding requires either evidence of a payment between the alien and the U.S. citizen or an admission that the marriage was fraudulent.  *See* (*id.* at 15–16; Hr'g Tr. 33:21–25, Mar. 29, 2019, ECF No. 14).  Petitioners believe that the absence of such "direct" evidence precludes the Court from finding that substantial evidence exists.  Petitioners are incorrect.

In support of their argument, Petitioners rely on a District of Connecticut decision, *Simko v. Bd. of Immigration Appeals*, 156 F. Supp. 3d 300, 311 (D. Conn. 2015), which held that direct evidence is required for the substantial and probative evidence standard.  The *Simko* court cited *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (BIA 1990), for the proposition that "BIA has an established policy that reasonable inferences do not 'rise to the level of substantial and probative evidence requisite to the preclusion of approval' of an I-130 Petition."  *Simko*, 156 F. Supp. 3d at 313.  The *Simko* court explained that "[i]n the decades since *Matter of Tawfik* was decided, the BIA has maintained this policy of requiring direct evidence of fraud . . . to warrant application of the marriage fraud bar."  *Id.* at 312 (citing *In re: Abdulla Hassim*, A72–657–963, 2006 WL 3922236 (BIA Dec. 28, 2006)).

*Simko* misstates the *Tawfik* standard.  "The Board in *Tawfik* never uses the words 'actual' or 'direct' nor does it hold only direct, and not circumstantial evidence,

8

can support a finding of marriage fraud." *See Quansah v. Sessions*, No. CV 17-4334, 2018 WL 401791, at *6 (E.D. Pa. Jan. 12, 2018) (citing *Tawfik*, 20 I. & N. Dec. at 167). Again, to show substantial evidence, the government need only find evidence that is "more than a scintilla, but . . . something less than a preponderance of the evidence." *Fla. Gas Transmission Co.*, 604 F.3d at 645. Courts have upheld marriage fraud determinations based on circumstantial evidence alone. *See, e.g.*, *Quansah v. Sessions*, 2018 WL 401791, at *6 ("Under *Tawfik*, the Board does not need sworn statements or confessions to find marriage fraud, it needs 'substantial and probative' evidence."); *Sablan v. Nielson*, 2018 WL 5880174, at *6 (C.D. Cal. Oct. 25, 2018) ("[D]irect evidence of intent is not required for a determination of marriage fraud."); *Kweicien v. Medina-Maltes*, No. 15-CV-5692, 2016 WL 6124448, at *6 n.7 (N.D. Ill. Oct. 20, 2016) (finding that "conclusive evidence," such as an admission that a prior marriage was fraudulent, is not required to establish "substantial evidence" of marriage fraud.)

IV

Petitioners also contend that USCIS violated their due process rights in denying the I-130 Petition. The "Due Process Clause applies to all 'persons' within the United States, including aliens, where their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). However, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the [Fifth Amendment's] protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972). Because the grant of an I-130 Petition for immediate relative status is a property interest encompassed by the

Fifth Amendment, it is entitled to due process protections. *See Zizi*, 306 F. Supp. 3d at 708.

"Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria and Workers Union, Local 473, AFL–CIO v. McElroy*, 367 U.S. 886, 895 (1961). It is a flexible notion that must adapt "as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In determining the level of process due, the Court must take into account (1) the private interest affected by the government; (2) the risk of erroneous deprivation under lesser procedures and the value added by additional procedure; and (3) the Government's interests, including fiscal and administrative burdens for additional procedure. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

A

As an initial matter, Petitioners appear to argue that USCIS's denial of the I-130 Petition, as a general matter, violated their due process rights under the Fifth Amendment. In the context of immigration adjudications, "due process requires three things." *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). An alien: (1) is entitled to "factfinding based on a record produced before the decisionmaker and disclosed to" him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to "an individualized determination of his [or her] interests." *See id.* (internal citations omitted).

In this case, USCIS and BIA provided ample due process to Petitioners. *See Zizi*, 306 F. Supp. 3d at 708. USCIS investigated evidence submitted by Petitioners, interviewed Petitioners, provided notice of their decision, and subsequently issued

10

written decisions based on the evidence in the record. Petitioners exercised the opportunity to appeal those decisions to the BIA, which reviewed the USCIS's determinations *de novo* before ultimately concluding that the record contained substantial and probative evidence that Kumar had engaged in marriage fraud. Finally, Petitioners were able to seek judicial review of the BIA's decision. These procedures exceed the minimum levels of due process required under the Fifth Amendment.

B

Petitioners also argue that Defendants violated their due process rights by not providing them "with meaningful access to allegedly derogatory information". (Compl. ¶ 51.) Regulation 8 C.F.R. § 103.2(b)(16)(ii) prohibits the agency from basing a determination of statutory eligibility on information that has not been disclosed to the applicant or petitioner. Specifically, it provides that the petitioner must be shown "[d]erogatory information unknown" to him. *Id.* at § 103.2(b)(16)(i).

Petitioners failed to exhaust their administrative remedies with respect to this claim. To exhaust a claim before the agency, an applicant must first raise the issue before the BIA, *see Alleyne v. INS*, 879 F.2d 1177, 1182 (3d Cir. 1989), so as to give it "the opportunity to resolve a controversy or correct its own errors before judicial intervention." *Id.* (citing *Zara v. Ashcroft*, 383 F.3d 927, 931 (9th Cir. 2004)). While "exhaustion of administrative remedies is not always required when the petitioner advances a due process claim," *Sewak v. INS*, 900 F.2d 667, 670 (3d Cir. 1990), where a "due process claim amounts to a procedural error correctable through the administrative process," a petitioner must exhaust his administrative remedies. *See*

*Khan v. Atty. Gen. of U.S.*, 448 F.3d 226, 236 (3d Cir. 2006) (citing *Sewak*, 900 F.2d at 670); *see also Bonhometre v. Gonzales*, 414 F.3d 442, 448 n.7 (3d Cir. 2005); *Eid v. Thompson*, 740 F.3d 118, 125 (3d Cir. 2014). Because the alleged failure to provide derogatory information is a procedural error that could have been corrected through the administrative process, Petitioners' failure to present this to the BIA precludes the Court's review.

Moreover, even if Petitioners had raised this issue to the BIA, USCIS complied with the requirements under 8 C.F.R. § 103.2(b). The regulation does not require the government to turn over the evidence in its primary form; a summary suffices. *See Zizi*, 306 F.Supp.3d at 704–05 (citing *Sehgal v. Lynch*, 813 F.3d 1025, 1031 (7th Cir. 2016)). USCIS provided the Petitioners with access to derogatory information through a summary in the Decision denying the I-130 Petition, *see* (R. at CAR000040–57), including inconsistencies in A.B.'s interviews with investigators.[1]

C

Petitioners next contend that they were entitled to a trial type hearing before a neutral adjudicator. Petitioners do not cite to any statutory provision or regulation that supports their argument. To the contrary, all that is required under 8 U.S.C. § 1154 is "an investigation of the facts in each case" by the Attorney General. 8 U.S.C. § 1154; *see also Ching v. Mayorkas*, 725 F.3d 1149, 1154 (9th Cir. 2013) (noting that there is no statutory right to an adjudicatory hearing under Section 1154). The level of process

---

[1] Petitioners also contend that a review of the entire administrative record revealed that a USCIS officer made strange judgmental comments about Kumar, "his religion, calling him a liar, and suggesting that his hand would burn on a Bible." (Resp. Opp'n at 26.) However, these statements all came from Kumar's sworn affidavit that he attached to his appeal, not the administrative record. *See* (Hr'g Tr. 25:15–26:12).

12

provided by USCIS and the BIA surpassed the minimum levels required for an I-130 Petition, and Petitioners were not entitled to such an adjudicatory hearing. Indeed, Petitioners conceded at oral argument that they did not have the right to a trial-type hearing as they claimed in their Complaint. (Hr'g Tr. 49:22–23.)

D

Petitioners also argue that "USCIS manifestly and repeatedly violated Deepak's right to representation of Counsel." (Resp. Opp'n at 28). Specifically, Petitioners contend that USCIS violated their due process rights by interviewing Kumar without counsel present. (*Id.*) Petitioners cite to two regulations in support of their argument, which provide that "[a]n applicant or petitioner may be represented by an attorney in the United States," 8 C.F.R. § 103.2, and that "whenever an examination is provided for in this chapter, the person involved shall have the right to be represented by an attorney or representative who shall be permitted to examine or cross-examine such person and witnesses, to introduce evidence, to make objections which shall be stated succinctly and entered on the record, and to submit briefs." 8 C.F.R. § 292.5(b).

While these regulations grant a petitioner the right to be represented by an attorney, they "[do] not grant the applicant the right to have his/her lawyer present or contacted first in every interaction with USCIS." *Osunsanya v. U.S. Citizenship & Immigration Servs.*, No. CIV A 06-10625-RWZ, 2007 WL 484864, at *4 (D. Mass. Feb. 12, 2007). Specifically, USCIS regulations do not prohibit contact with an applicant represented by counsel without his lawyer present during an investigation. *See Wood v. Nielsen*, No. 18-CV-00281-DMR, 2019 WL 285929, at *11 (N.D. Cal. Jan. 22, 2019);

13

*Boukhris v. Perryman*, No. 01 C 3516, 2002 WL 193354, at *4 (N.D. Ill. Feb. 7, 2002)). Petitioners do not cite any legal authority establishing such a right.

Petitioners also cited to a USCIS Policy memorandum, *USCIS Interim Policy Memo, The Role of Private Attorneys and Other Representative, Dec. 21, 2011*, which states that "when an examination is to be conducted in immigration proceedings, the person involved has the right to be represented." To the extent that the memorandum is applicable here, it lacks the force of law. *See Jessop v. Johnson*, 2017 WL 2957820 at *4 n.7 (E.D. Pa. July 10, 2017); *Lawrence v. City of Phila.*, 527 F.3d 299, 316 n.6 (3d Cir. 2008) ("[A]gency manuals . . . lack the force of law"). Moreover, as BIA explained in its decision, the memorandum provides that an attorney must submit a Form G-28 in each case in which he or she seeks to appear to be recognized by USCIS. (R. at CAR000006.) In this case, the BIA found no evidence that a Form G-28 was ever submitted to the USCIS. (*Id.*)

V

Petitioners claim that "Section 204(c) of the Act, 8 U.S.C. § 1154 as applied here violates the . . . Eighth Amendment prohibition against excessive penalties". (Compl. ¶ 53.) "As removal cannot violate the Eighth Amendment because it is not a criminal punishment, *see Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952), the denial of an I–130 Petition no doubt cannot do so." *Eid*, 740 F.3d at 126 (citing *Barmo v. Reno*, 899 F.Supp. 1375, 1385 (E.D.Pa. 1995)). Furthermore, Petitioners did not respond to this issue in their response to the Motion for Summary Judgment and conceded at oral argument that this allegation was meritless. (Hr'g Tr. 21:6–9.)

An appropriate order follows.

14

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.